IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CLEMENTINE CLARK, *on behalf of minor child QP*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) | Civil Action No. 3:04-CV-01061-WKW [WO]
| RUSSELL COUNTY BOARD OF EDUCATION, *et al.*, | ) ) ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendants' *Motion for Summary Judgment* (Doc. 18) is due to be granted pursuant to the findings and conclusions discussed in this Recommendation of the Magistrate Judge.

**I.   PROCEDURAL HISTORY**

Represented by counsel, on November 2, 2004, Clementine Clark ("Clark") on behalf of QP, a minor child initiated this action against the Russell County Board of Education ("RCBOE"); Dr. Phillip Elder, in his individual and official capacity as Superintendent of the RCBOE ("Supt. Elder"); and Larry Screws, in his individual and official capacity as former Principal of Mt. Olive Elementary School ("Principal Screws"). Docketed as a civil rights action under 42 U.S.C. §1983, the complaint asserted an additional assortment of federal jurisdictional grounds and state tort claims [1] arising from Principal Screws' alleged assault on

---

[1] Because summary judgment is clearly warranted on the federal claims alleged, these state torts included as pendent claims need not be considered: assault and battery (¶¶ 24-26); negligent (continued...)

the minor plaintiff – by "throwing [him] down and choking him" at the school on September 9, 2003. On May 10, 2005, the court granted the motion of plaintiffs' counsel to withdraw (Doc. 15), and Plaintiff has failed to secure other representation.[2]

A scheduling order filed June 1, 2005, reset the requested jury trial for the April 10, 2006 term, with a dispositive motion deadline of December 10, 2005, and a discovery deadline of February 17, 2006. Defendants timely filed their dispositive motion along with a Narrative Summary of Undisputed Facts and a supporting brief. (Docs. 18 and 19, Dec. 9, 2005). Upon referral of the case, including the dispositive motion, for pretrial action and recommendations (Doc. 20, Dec. 13, 2005), the Magistrate Judge set a January 9, 2006, show-cause deadline for the *pro se* plaintiff's response. After Defendants objected to Plaintiff's Motion for Extension of Time (Docs. 22 and 23)[3], the court set the M*otion* for hearing on January 13, 2006, advising, in relevant part:

---

[1](...continued)
training and supervision (¶¶ 27-29); negligence and gross negligence (¶¶ 30-32); wantonness (¶¶ 33-36); and intentional infliction of emotional distress (¶¶ 36-39). It bears noting, however, that each of these claims is insufficiently plead and unsupported by the same undisputed facts which dictate summary judgment on the federal claims. Moreover, the RCBOE properly claims sovereign immunity, and its Superintendent and Principal would similarly enjoy immunity as state agents performing discretionary functions. *See Def.'s Br.* at 20-43.

[2]The *Motion* by Attorneys Zachary T Collins and Juraldine Battle-Hodge cited "an irreconcilable breakdown of the attorney-client relationship." (Doc. 14)

[3]Plaintiff's handwritten, non-captioned pleading requested "my case to be set aside for a later date all because at this present time I do not have a attorney" and appeared to state her intent to maintain this lawsuit against only defendant Larry Screws. Defendants' *Objection* (Doc. 23, Dec. 28, 2005) argued that "plaintiff has had adequate time to retain an attorney."

> Plaintiff filed this pending motion to secure a lawyer more than seven months after the withdrawal of previous counsel, and her motion provides no basis for evaluating any good-faith efforts undertaken to secure counsel. Solely in deference to the plaintiff's *pro se* status, it is
>
> **ORDERED** that this ***Motion* is set for hearing at 10:00 a.m. *on Friday, January 13, 2006*** in Courtroom 4A. **Plaintiff MUST APPEAR with or without an attorney, and she is HEREBY WARNED that the court may consider her failure to attend as abandonment of this lawsuit and shall proceed to consider the pending summary judgment motion.** Plaintiff shall be prepared to show any good cause for granting her any additional time to secure a lawyer, and she shall be prepared to document each effort undertaken to hire new counsel since the May 9, 2005 filing of her previous lawyers' motion to withdraw.

(Doc. 24, Jan. 3, 2006).

Clark appeared at the scheduled hearing as did Defendants' counsel, Phillip Franklin Hutcheson, and Defendant Screws. Clark orally moved to dismiss the RCBOE and Supt. Elder from the case, explaining that she did not have specific complaints against them, that post-incident communications with them had satisfied her preliminary concerns, and that her lawyers decided to designate them as defendants. After duly considering the plaintiff's sworn testimony, the court entered the following findings:

> *1.* Notwithstanding notice as early as April 25, 2005 (following the taking of her deposition) that her counsel of record would not continue his legal representation, the Plaintiff failed to undertake any good-faith effort to secure substitute counsel until December 2005, when she telephoned one Montgomery-based lawyers and January 2006, when she reported unsuccessful phone solicitations to two lawyers based in Phoenix City and a third with offices in Columbus, Georgia. The court finds unreasonable Plaintiff's explanation that the delay reflected her confusion regarding the status of her case after withdrawal by her lawyer. In the interim of at least seven months after the court's order permitting withdrawal of counsel, Plaintiff had a reasonable opportunity to exercise greater diligence in seeking substitute counsel. Though Plaintiff is a fifth-grade dropout who earned a G.E.D. in 1983, she is employed, communicates sufficiently for basic comprehension, acknowledged her access to friends for lawyer referrals, and offers no compelling excuse for her dilatoriness.

> *2.* The likelihood that additional time will increase Plaintiff's prospects in securing counsel is slim. Any competent lawyer experienced in federal civil rights practice will readily discern from the complaint and summary judgment motion the patently insurmountable obstacles to any recovery by Plaintiff. Plaintiff's own testimony reflects her misgivings about finding counsel in that she requested that she be permitted, at minimum, to represent herself with an extension of time to respond to the pending motion.
>
> *3.* Upon Plaintiff's request that she be permitted to dismiss two of the three designated defendants – the Russell County Board of Education and Dr. Phillip Elder – the court examined and counseled further sufficiently to find that her request is voluntary, knowing, and based on her acknowledgment that her asserted claims were grounded on her negative emotions which ameliorated somewhat following communications with these defendants. As indicated during this proceeding, the court will not premise dismissal of these defendants solely on Plaintiffs' oral request but will instead inform any recommendation for dismissal on the merits of these Defendants' claimed entitlement to summary judgment.

(Doc. 26, Jan. 13, 2006).

Pursuant to these findings the court denied Clark's *Motion* to the extent of her request for a stay of proceedings in order to allow additional time for her to secure counsel; but granted the *Motion* only to the extent of her orally amended request for an extension of time to file *pro se* a response in opposition to Defendants' summary judgment motion, extending the deadline to January 27, 2006.

Clark has filed no response at all to the summary judgment motion.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment always bears the

4

initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings and evidentiary record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present sufficient evidence to establish an essential element of the non-moving party's claim. *Celotex* at 331. As the Supreme Court instructed in *Celotex, 477 U. S. at 323,* "the plain language of Rule 56(c) mandates the entry of summary judgment . . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

In response to a properly supported motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits, or as otherwise provided .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). Substantive law will identify those facts which are material on motions for

5

summary judgment. *Id.* at 258.

## III. DISCUSSION

### A. Defendants "RCBOE" and Supt. Elder

Notwithstanding its finding that Clark's oral motion to end her lawsuit against the RCBOE and Supt. Elder is " voluntary, knowing, and . . . acknowledg[es] that . . . asserted claims were grounded on her negative emotions which ameliorated somewhat following communications with these defendants", the court has proceeded to examine the summary judgment submissions to ascertain their merit as to these defendants.

Defendants properly cite the absence of any evidentiary foundation for the Title VII claim against the RCBOE, described in Count 1 as "deprivation of civil rights." Claiming "emotional distress and mental anguish" by her son, Clark ground the claim solely on his removal from school on December 11, 2002:

> During the time period following, until the end of the 2002-2003 school term, Plaintiff QP did not receive sufficient public school instruction and/or assistance from the defendant Board. During the same period, Defendant Board failed to sufficiently provide the necessary teachers, books, and other material to ensure that Plaintiff QP was not deprived of his civil rights to obtain an adequate public education.

This allegation states no claim cognizable under 42 U.S.C.§ 2000e and none otherwise cognizable in this court.[4]

Neither Count 1 nor the captioned Count 2 action – "42 U.S.C. § 1983 against Individual Defendants" – directs any allegations against the defendant Superintendent but instead only

---

[4]Assuming Plaintiffs' intention to state a claim sounding in malpractice by the RCBOE and Supt. Elder, Defendants show the lack of judicial precedent for any such claim. *See Defs.' Br.* at 7-10.

6

generally and insufficiently alludes to "unconstitutional policies and customs practiced by Defendants"[5], and imputes to the defendant Board knowledge of unconstitutional deprivations. [6] When a governmental officer sued individually under Section 1983 asserts qualified immunity, as is the case here, controlling Eleventh Circuit precedent imposes a "heightened pleading" standard for the complaint instead of Rule 8's minimal notice pleading.[7]  Accordingly, like Principal Screws, Supt. Elder would be entitled to claim qualified immunity, but the complaint presents no particularized conduct, much less any violation of a clearly established constitutional or statutory right, for any analysis.  Moreover, it appears that respondeat superior is the intended

---

[5]Claims asserted against Defendants Elder and Screws in their official capacity are due to be dismissed – to the extent they state claims – as impermissible actions against the state.  *See Busby v. City of Orlando*, 931 F. 2d 764, 776 (11th Cir. 1991) ("In contrast to individual capacity suits, when an ... [employee] ... is sued in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an ... [employee] .. Is an agent."

[6]Paragraphs 21 and 22 of the Complaint aver:

> Defendant Board was deliberately indifferent to the abuse when it failed to take appropriate action when it placed Plaintiff QP in an inadequate homebound program, and failed to properly protect Plaintiff QP from and as a result of the assault and battery. (¶ 21).  By failing to properly supervise and train or to provide an adequate alternative for Plaintiff QP, Defendant Board with deliberate indifference, malice and bad-faith caused Plaintiff QP to undergo further abuses. (¶ 22)

[7]*See GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998)("We stress at this point, . . . that the heightened pleading requirement is the law of this circuit. . . . Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving municipalities,  *see Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), the Court specifically declined to extend its holding to cases involving individual government officials,  *see id*. at 167, 113 S.Ct. at 1162, and we likewise decline to do so here.");  *See Wash v. Bauer*, No. 05-10531, 2005 U.S. App. LEXIS 19395, at *5 (11th Cir. Sept. 2, 2005)("[T]here is a heightened pleading requirement when a plaintiff brings a §1983 complaint against officials acting in their individual capacities.")

though impermissible basis for Section 1983 liability against the RCBOE and Supt. Elder. *See Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir.1992).[8]

Because the undisputed submissions clearly show the lack of any disputed material issue of fact, as it relates to putative liability, and otherwise demonstrates these defendants' entitlement to judgment as a matter of law, the court recommends entry of the requested summary judgment.

### B.   Defendant Principal Screws

Pressed during oral arguments to explain the basis of her action against Principal Screws, Clark simply repeated her apparently sincere belief that the Principal wrongly assaulted her child though she acknowledged the absence of any serious or permanent injuries. She offered neither factual nor legal support for her opinion. While no written submissions controvert the requested summary judgment, the court duly examines the merit of the motion.[9] Defendants' submissions clearly demonstrate the absence of any genuine

---

[8] Plaintiffs do not allege the Board's or the Superintendent's supervisory liability because either directly participated in the alleged assault underlying the complaint or either acted to cause directly the assault. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)]; *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (describing the "extremely rigorous" standard for the referenced supervisory liability).

[9] In *Trustees of Central Pension Fund v. Wolf Crane Service, Inc.*, 374 F. 3d 1035, 1039(11th Cir. 2004), the Eleventh Circuit emphasized that "summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment", and thus reaffirmed its instruction to trial courts, in *United States v. One Piece of Property*, 5800 S.W. 4th Ave., Miami,
(continued...)

issue of disputed material fact and Principal Screws' entitlement to judgment as a matter of law.

### 1. *Undisputed Material Facts*

Undisputed altogether is the defendant Principal's account of the material facts which provide the analytical context for Clark's liability claims:

> 8. On December 10, 2002, Q.P., a third-grade student Mt. Olive Elementary School informed his teacher, Mrs Prosser, after she threatened to send him to the office, that he was not afraid of Mr. Screws and that e would "bring a fucking knife to school and kill him." I was familiar with Q.P., as he had been in trouble on several prior occasions, including one time where he wrote a note that he hated his mother and was going to kill her.
>
> 9. I suspended Q.P. pending Class III (Major Offense) disciplinary hearing before a Hearing Tribunal as set out in the Russell County Schools Handbook and the policies of the Russell County Board of Education. According to the Russell County Schools Handbook and the policies of the Russell County Board of Education, the normal punishment for a Class III offense is removal from school for the remainder of the school year. The Class III hearing was held on December 16, 2002. Following the Class III hearing, Q.P. was not allowed to return to Mt. Olive Elementary School for the remainder of the school year. To my knowledge, Q.P. did not appeal this decision to the Superintendent as allowed by the Russell County Schools Handbook and the policies of the Russell County Board of Education.
>
> 10. On September 9, 2003, Q.P., who was back in school at this time, was brought to the office by Assistant Principal Curtis Jernigan for talking back to his teacher, calling her "stupid," and basically disrupting her class. Mr. Jernigan asked the school secretary, Ms. Hood, to call Q.P.'s mother, but when

---

[9](...continued)
*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004), not to " base the entry of summary judgment on the mere fact that the motion was unopposed but, rather,[to] consider the merits of the motion." (citing Fed.R.Civ.P.56(e)).

Ms. Hood could not reach her, Q.P. was asked to sit in a chair outside my office.

11.   I began to talk to Mr. Jernigan in my office while Q.P. was outside my office.  At that point, Q.P. stood up and began making disruptive noise.  I could hear him mutter, "stupid," under his breath.  I asked him to sit down and be quiet numerous times, but he continued to stand and make disruptive noise.  I finally walked out of my office, and based on my education, training and background, made the decision to put both hands on Q.P.'s shoulders, and push him down in his seat.  At that point, Q.P. wadded up a paper he had in his hand and hit me in the chest with it.  I then restrained Q.P. by placing my left hand on his shoulder, and I asked Mr. Jernigan to come get Q.P.  I had no intent to cause any harm to Q.P. but merely to maintain discipline and prevent further disruption in the office.  I used the reasonable and appropriate physical force upon Q.P. that I believed was necessary and appropriate to maintain discipline.

12.   As Mr. Jernigan took Q.P. out of the office down the hall, Q.P. ran out the front door.  I saw him out the window of my office with a stick in his hand waving it threateningly at me.  As Mr. Jernigan and I started to the outside of the building, we noticed Q.P. coming in the front of the building.  He had a brick in his hand and was making threats as he approached me.  Mr. Jernigan jumped between me and Q.P. and wrestled the brick away from him.

13.   I requested another Class III hearing for Q.P.  By this time, Q.P. had been determined to be in need of special education services.  Under the provisions of the Russell County Schools Handbook and the policies of the Russell County Board of Education, his case was turned over to special education and his IEP (individualized education plan) team for placement.

14.   I have never spoken to the plaintiff or his next of friends regarding the allegations made in this lawsuit.

15.   I know the student plaintiff, and I have no ill-will towards him.  I have never acted willfully, maliciously, fraudulently, in bad faith, or with any intent to cause him damage or injury.

16.   At all times pertinent herein, I exercised my best judgment, professional training and experience in the discharge of my duties as Principal of Mt. Olive

Elementary School in dealing with the plaintiff, Q.P.[10]

### 2. *Summary Judgment Analysis*

Because Defendant Screws asserts qualified immunity,[11] the court must decide initially if his actions in controversy occurred within the scope of his discretionary authority. His unchallenged affidavit leaves no doubt that they did.[12]   The complaint attributes to Principal Screws individual liability for an alleged assault against the minor school student.  In order to defeat the claim of qualified immunity, Clark must establish first that Principal Screws violated her minor's clearly established right.  The court's evaluation must be guided by the two-pronged test required by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001):

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?...[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry...must be undertaken in light of the specific context of the case, not as a broad general proposition.

---

[10] Affidavit of Larry Screws ("Screws Aff.") at 3-5, *Ex. 1, Mot*. (Doc. 18).

[11] Qualified immunity offers "complete protection for government officials sued in their individual capacities if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[12] An officer asserting qualified immunity "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1998)). Assuming the officer's requisite showing for his discretionary authority, the burden shifts to the Section 1983 plaintiff to demonstrate the impropriety of qualified immunity.

Concerning the predicate inquiry, the only evidence submitted on this summary judgment motion disputes the assault described in the complaint – "throwing ...Q.P. down and choking him" – denies any willful or malicious intent by the Principal to harm the minor student, and provides relevant context which demonstrates affirmatively both the defendant principal's authorization for the disciplinary action taken against the minor and the reasonableness of that action.  The facts simply do not approach even the borders of a constitutional violation, and no controlling judicial precedent suggests otherwise.

## IV.   CONCLUSION

Based on these findings and conclusions, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that *Defendants' Motion for Summary Judgment* (Doc. 18) be GRANTED, and, accordingly, that JUDGMENT be entered against the Plaintiff, "Clementine Clark, on behalf of Minor Child, QP", and in favor of all Defendants – Russell County Board of Education, Phillip Elder, Superintendent, and Larry Screws, Principal – with this action being dismissed with prejudice.

It is further **ORDERED that the parties shall file any objections to this not later than February 28, 2006.**   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981

Done this 14th day of February, 2006

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE